UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RONALD J. THOMPSON,

    Petitioner,

v.                                      CASE NO. 6:07-cv-1791-Orl-31DAB

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

    Respondents.

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 6). Petitioner filed a reply to the response (Doc. No. 11).

Petitioner alleges four claims for relief in his habeas petition, that trial counsel rendered ineffective assistance by: (1) failing to call Dr. Newman to testify; (2) failing to properly cross-examine witnesses; (3) failing to recall the victim for additional questioning regarding her inconsistent statements; and (4) failing to file a motion to suppress statements he made to a law enforcement officer. For the following reasons, the petition is denied.

I.      *Procedural History*

Petitioner was charged by information with six counts of sexual activity with a minor by a person in familial or custodial control (counts one through six), one count of possession of not more than 20 grams of cannabis (count seven), and one count of possession of drug paraphernalia (count eight). The State *nol prosssed* counts one, three, and five. A jury trial was conducted, and Petitioner was found guilty of counts four, six, seven and eight and not guilty of count two. The trial court sentenced Petitioner to concurrent 224-month terms of imprisonment as to counts four and six and to a 364-day term of imprisonment as to counts seven and eight. Petitioner appealed, and the Fifth District Court of Appeal of Florida *per curiam* affirmed.

Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, raising six claims for relief. The state trial court summarily denied four of Petitioner's claims and granted an evidentiary hearing as to two claims. After the hearing, the trial court denied the remaining two claims. Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed *per curiam*.

Petitioner filed a second Rule 3.850 motion, which the trial court denied as successive. Petitioner appealed, and the state appellate court affirmed *per curiam*.

II.     *Legal Standards*

A.      *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

>    (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue

3

made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B. *Standard for Ineffective Assistance of Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume

---

[1]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

4

> effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III. Facts Adduced at Trial

At trial, the victim, Petitioner's stepdaughter, testified that Petitioner had penetrated her vagina with his fingers, but with no other objects. Evidence was presented, however, establishing that when the victim initially made her allegations of abuse, she told police and a nurse that Petitioner had penetrated her vagina with his penis and sex toys and that Petitioner had performed anal sex with her. Deborah Scott ("Scott"), a nurse who examined the victim, testified that the condition of the victim's vagina demonstrated that there had been penetration of her vagina.

The victim denied that she had been sexually active with anyone other than Petitioner. However, the victim's journal/diary, which contained sexually explicit drawings and statements pertaining to someone other than Petitioner, was admitted into evidence.

The victim's mother and Petitioner's wife, Rebecca Thompson ("Thompson"), testified for the defense. Thompson indicated that she questioned the veracity of the

victim's allegations. Thompson testified that after making the allegations against Petitioner, the victim implied that she could not tell the truth because a police officer had advised her that if she changed her story, she would get in trouble.

Testimony was presented demonstrating that the victim thought Petitioner was a strict disciplinarian and that the victim wanted Petitioner to leave the home. Petitioner testified that he did not penetrate the victim's vagina with his fingers, but he had disciplined and spanked the victim.

## IV. *Analysis*

### A. *Claim One*

Petitioner asserts that trial counsel rendered ineffective assistance by failing to call Dr. Newman to testify on his behalf. Petitioner maintains that Dr. Newman would have provided exculpatory evidence and rebutted the testimony of the victim and Scott.

Petitioner raised this claim in his Rule 3.850 motion. The state court held an evidentiary hearing on the claim. Thereafter, applying *Strickland*, the state court denied relief. (App. H at 149.) The state court reasoned that counsel recognized that Dr. Newman's testimony would have contradicted some of Scott's testimony, but counsel determined that Dr. Newman's testimony "would have corroborated [Scott's] testimony on many points and would have been more damaging to the defense on others." *Id*. The state court concluded that counsel's decision not to call Dr. Newman was a reasonable strategic decision. *Id.* The state court further noted that counsel testified that he discussed

6

the decision not to call Dr. Newman as a witness with Petitioner and believed Petitioner agreed with the decision. *Id.*

"The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony. The witness may not testify as anticipated, or the witness's demeanor or character may impress the jury unfavorably and taint the jury's perception of the accused; or the testimony, though sympathetic, may prompt jurors to draw inferences unfavorable to the accused." *Lema v. United States*, 987 F.2d 48, 54 (1st Cir. 1993) (citations omitted). "A strategic decision by defense counsel will be held to constitute ineffective assistance 'only if it was so patently unreasonable that no competent attorney would have chosen it.'" *Kelly v. United States,* 820 F.2d 1173, 1176 (11th Cir. 1987) (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).

Petitioner has failed to advance a persuasive argument that trial counsel's decision not to call Dr. Newman was unreasonable or that this decision can be construed as conduct outside the wide range of professional representation. Consistent with his medical report, Dr. Newman would have testified that the victim's hymen was not intact.[2] Although Dr. Newman may have testified that one finger could be inserted into the victim's vagina versus Scott's testimony that two fingers could be inserted into the victim's vagina, such testimony was not exculpatory. Dr. Newman could have testified that the victim indicated

---

[2]The Court's determination as to what Dr. Newman may have testified is based on his report completed after examining the victim.

that she had been subject to vaginal penetration with sex toys and Petitioner's penis in contradiction to the victim's trial testimony that Petitioner only used his fingers to penetrate her vagina. However, defense counsel was effectively able to demonstrate such inconsistencies in the victim's statements through his cross-examination of the victim and Scott. In sum, the state court's determination that counsel's decision not to call Dr. Newman to testify was reasonable is neither contrary to, nor an unreasonable application of, *Strickland* and it is not an unreasonable determination of the facts in light of the evidence. Accordingly, claim one is denied pursuant to § 2254(d).

B.   *Claim Two*

Petitioner asserts that counsel rendered ineffective assistance failing to properly cross-examine Scott, William McNett ("McNett"), and Thompson. Petitioner asserts that counsel failed to impeach these witnesses by demonstrating that (1) Scott had referred to Petitioner as "dog meat", (2) McNett was charged with abusing his own children, and (3) Thompson was not actually in fear of Petitioner.

Petitioner raised this claim in his Rule 3.850 motion. Applying *Strickland*, the state court denied relief. (App. H at 47-48.) First, the state court reasoned that during the trial Scott denied calling Petitioner "dog meat" and she did not testify that Petitioner molested the victim. *Id*. at 48. The state court determined that Petitioner could not establish he was prejudiced by counsel's failure to further attempt to impeach Scott. *Id*.

The state court further found that impeaching McNett, a former officer who testified at trial about his interview of Petitioner regarding the victim's allegations and his

8

observation of drug paraphernalia in Petitioner's home, concerning allegations of physical abuse against McNett was not relevant to the charges against Petitioner or McNett's testimony. *Id.* The state court noted that McNett testified primarily about the drug charges and his only testimony regarding the sexual abuse charges was that Petitioner said that "he [beat] the victim's ass." *Id.*

Finally, the state court noted that Thompson was actually called as a defense witness. Furthermore, on redirect, Thompson testified that although she indicated that she was afraid of Petitioner on the night the allegations were made, she was not currently in fear of Petitioner. *Id.* As such, the state court concluded that Petitioner failed to demonstrate that he was prejudiced by counsel's alleged failure to further impeach or question these witnesses. *Id.*

In assessing this claim, the state court utilized the standard set forth in *Strickland*. The record supports the state court's determination. Counsel thoroughly questioned these witnesses and raised the issues that Petitioner maintains counsel failed to properly raise. Petitioner has not demonstrated either deficient performance or prejudice. Accordingly, this claim is denied pursuant to § 2254(d).

### C.   *Claim Three*

Petitioner asserts that trial counsel rendered ineffective assistance by failing to recall the victim for additional questioning regarding her inconsistent statements. Specifically, Petitioner contends that counsel should have recalled the victim to question her about (1) a statement she made to her mother, (2) her testimony that her bunk bed had a ladder, (3)

9

her testimony that Petitioner and Thompson had been fighting on the night she told Thompson that Petitioner had been sexually abusing her, (4) her testimony that she was not sexually active, (5) her use of tampons,[3] and (6) her knowledge of whether Thompson had sex toys.

Petitioner raised this claim in his Rule 3.850 motion. Applying *Strickland*, the state court denied relief. (App. H at 49.) The state court reasoned:

> The other witnesses contradicted the victim's testimony [regarding the issues raised by Petitioner] in his [Rule 3.850] motion. Counsel pointed out several discrepancies in his closing argument. . . . Recalling the victim to testify about information she had already discussed would not have served any purpose; in fact, it may have allowed her the opportunity to explain away any discrepancies. [Petitioner] cannot show he was prejudiced by counsel's failure to recall the victim to the stand. Therefore, relief should be denied as to this claim.

*Id.*

The record demonstrates that counsel questioned the victim about many of the issues he raises in claim three and further questioned other witnesses about various inconsistencies between the victim's testimony and her prior statements. Furthermore, counsel argued all of these inconsistencies during closing. The Court concludes, therefore, that Petitioner has failed to demonstrate either deficient performance or prejudice

---

[3]The Court notes that Scott testified that the use of tampons could not cause the damage/condition to the victim's vagina which she observed. (App. A at 183.) Therefore, even assuming counsel was deficient for not questioning the victim about her use of tampons, he has not demonstrated that he was prejudiced by counsel's failure to do so.

regarding counsel's failure to recall the victim. Accordingly, this claim is denied pursuant to § 2254(d).

### D. *Claim Four*

Petitioner asserts that counsel rendered ineffective assistance by failing to file a motion to suppress his statement to Officer McNett. Specifically, Petitioner maintains that counsel should have moved to suppress his statements to McNett because he was not read his *Miranda*[4] rights. At trial, McNett testified that Petitioner told him that he had to beat the victim's ass on a daily basis. (App. A at 155.)

Petitioner raised this claim in his Rule 3.850 motion. The state court held an evidentiary hearing on the claim. Thereafter, the court found the claim was without merit pursuant to *Strickland*. The state court reasoned:

> [S]ince the entire defense case was predicated upon the theory that the victim made false allegations because [Petitioner] was a harsh disciplinarian, this statement was key to the case. The statement, as testified to, was given by [Petitioner] in the context of a denial when he was initially confronted with the allegations by law enforcement. It supported the defense theory that the victim only wanted [Petitioner] to be removed from the home. Counsel's decision not to suppress this statement was reasonable, and nonprejudicial in light of the defense asserted at trial.

(App. H at 150.)

The record demonstrates that Petitioner's defense at trial was that the victim fabricated the allegations against him because he was a harsh disciplinarian and the victim

---

[4]*Miranda v. Arizona*, 384 U.S. 436 (1966).

wanted him out of the home so she could do as she wished. In fact, Petitioner and Thompson testified that Petitioner had spanked the victim with a belt. (App. A at 293, 362.) McNett's testimony regarding Petitioner's statement, therefore, clearly supported Petitioner's defense. Moreover, McNett testified that Petitioner denied the victim's allegations of sexual abuse. (App. A at 155.) As such, the Court concludes that counsel did not render deficient performance by failing to move to suppress Petitioner's statements nor was Petitioner prejudiced by counsel's failure to do so. The state court's determination, therefore, is neither contrary to, nor an unreasonable application of, *Strickland*. Accordingly, claim four is denied pursuant to § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Ronald J. Thompson is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** at Orlando, Florida, this 3rd day of April, 2009.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
sc 4/3
Counsel of Record
Ronald J. Thompson